**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CIVIL ACTION NO. 20-49-DLB**

**RYAN VERNATTER**                                                                 **PLAINTIFF**

**v.**                         **<u>MEMORANDUM OPINION AND ORDER</u>**

**ANDREW SAUL, Commissioner
of the Social Security Administration**                                        **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiff Ryan Vernatter's Motion for Summary Judgment, (Doc. # 14), pursuant to 42 U.S.C. § 405(g), which allows Mr. Vernatter to obtain judicial review of an administrative decision by the Commissioner of Social Security. Defendant Andrew Saul, Commissioner of the Social Security Administration, filed a Cross Motion for Summary Judgment. (Doc. # 16). The Court, having reviewed the administrative record and the parties' motions, and for the reasons set forth herein, **reverses and remands** the Commissioner's decision.

**I.**     **FACTUAL AND PROCEDURAL BACKGROUND**

On November 14, 2016, Plaintiff Ryan Vernatter filed an application for Disability Insurance Benefits under Title II of the Social Security Act, alleging disability as of November 9, 2016. (Tr. 277-279). Plaintiff was forty-one years old at the onset of the alleged disability that rendered him unable to work. (Tr. 284). Plaintiff's application was denied initially on April 11, 2017, (Tr. 136), and upon reconsideration on July 18, 2017, (Tr. 150-151). At Plaintiff's request, (Tr. 167-168), an administrative hearing was

conducted, (Tr. 95-123), and on April 2, 2019, Administrative Law Judge ("ALJ") Charlie M. Johnson found that Plaintiff was not disabled under the Social Security Act and, therefore, not entitled to benefits. (Tr. 77-89). The decision became the final decision of the Commissioner on April 13, 2020 when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

## II.   DISCUSSION

### A.   Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Rather, the Court must affirm the Commissioner's decision as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side. *Id.*; *see also Listenbee v. Sec'y*

of Health & Human Servs., 846 F.2d 345, 349 (6th Cir. 1988). In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole." *Cutlip*, 25 F.3d at 286. However, "[t]his deferential standard of review applies only to resolving issues of fact and credibility." *Listenbee*, 846 F.2d at 349 (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 n.3 (11th Cir. 1982)).

**B.	The ALJ's Determination**

To determine disability, an ALJ conducts a five-step analysis. *Walters*, 127 F.3d at 529. Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *See id.* (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant for Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity." *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity after November 9, 2016, the onset date of Plaintiff's alleged disability. (Tr. 79). At Step Two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease, status post history of lumbar surgery, and status post right posterior fossa craniotomy for resection of cerebellar tumor. (*Id.*). However, the ALJ

classified Plaintiff's hypertension as non-severe. (Tr. 80). As for Plaintiff's asserted mental impairment of anxiety, the ALJ found that it "does not cause more than a minimal limitation on the claimant's ability to perform basic mental work activities and is therefore non-severe." (*Id.*). At Step Three, the ALJ determined that Plaintiff does not have any impairment or combination of impairments that meet or medically equal the severity of any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 82).

The ALJ then determined that Plaintiff possesses the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. § 404.1567(b), except that he can perform only "occasional balancing, kneeling, crouch[ing], climbing, and crawling; frequent stooping; [and] must avoid concentrated exposure to vibration; must avoid even moderate exposure to hazards." (*Id.*). The ALJ ultimately concluded at Step Four that Plaintiff cannot perform any of his past relevant work, including that of a nurse or a corrections officer. (Tr. 87).

At Step Five, the ALJ concluded due to Plaintiff's age, education, work experience, and RFC, that there are numerous jobs that Plaintiff is able to perform in the national economy. (Tr. 88). Based on the opinion of a vocational expert, the ALJ determined that Plaintiff could engage in light unskilled occupations, such as a marker, a checker, or a routing clerk. (*Id.*). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act at any time after November 9, 2016. (Tr. 89).

**C.  Analysis**

In Plaintiff's Motion for Summary Judgment he raises four (4) arguments: (1) the ALJ erred at Step Two by not considering Plaintiff's headaches a severe impairment, (2) the ALJ failed to present a hypothetical Residual Functional Capacity ("RFC") that

4

adequately reflected Plaintiff's conditions, (3) the ALJ erred in adopting non-examiners' opinions and by disregarding a treating physician's opinion, and (4) the ALJ accepted vocational expert testimony that was inconsistent with the SSA's regulations. (Doc. # 14-1 at 1). Because Plaintiff's arguments that the ALJ failed to present an accurate hypothetical and the ALJ accepted vocational expert testimony that was inconsistent with SSA regulations are inextricably intertwined, the Court will consider them together.

### 1. The ALJ's Consideration of Plaintiff's Headaches as a Severe Impairment

Plaintiff first argues that the ALJ erred at Step Two by not considering Plaintiff's headaches as a severe impairment. (*Id.*). At Step Two, the ALJ is charged with determining whether any of a claimant's impairments are "severe." *Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Plaintiff correctly notes that a determination that an impairment is severe is a "*de minimis* hurdle" and an impairment will not be considered severe only "if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); (Doc. # 14-1 at 2). The medical record and Vernatter's description of his symptoms appear to support a finding that his headaches are severe. (*See* Tr. 103-105, 408, 453, 456, and 478).[1] Further, the headaches continued after Vernatter's craniotomy. (Tr. 1340, 1399-1400, and 1543).[2]

---

[1] In Vernatter's testimony before the ALJ, he stated that his headaches prevent him from working because he never knows when "[he's] going to have headaches that are pretty much debilitating." (Tr. 103-104). Further, medical records in the Administrative Transcript indicate that Vernatter did suffer from severe headaches prior to his craniotomy: Vernatter "complains of pain that starts at base of neck and radiates up back of head . . . [r]ates pain 7 now, worst 10 and best 2," (Tr. 453), and Vernatter suffers from "dizziness and headaches," which are "constant" with "worsening" progression," (Tr. 478).

[2] While the record indicates that Plaintiff's "headaches [are] actually much better than they were premorbidly," (Tr. 1340), the headaches still continued and decreased Vernatter's

5

However, as the Commissioner correctly points out, the ALJ's failure to consider Vernatter's headaches as a severe impairment is not fatal because Vernatter's claim was not denied at Step Two. (Doc. # 16 at 4-5). When an ALJ fails to consider a severe impairment, but the claimant still clears Step Two of the ALJ's analysis, the mistake is "legally irrelevant" so long as the ALJ considers all of claimant's impairments in the remaining steps. *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir 2008); *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 634 (6th Cir. 2016). Thus, even assuming that the ALJ erred in failing to consider Plaintiff's headaches as severe, the error was harmless because the ALJ went on to consider both Plaintiff's severe and non-severe impairments, including his headaches, in subsequent steps, (Tr. 84-87). *Anthony*, 266 F. App'x at 457.

### 2. The ALJ's Failure to Present an Accurate Hypothetical RFC to the Vocational Expert and the ALJ's Acceptance of the Vocational Expert's Testimony

Next, Plaintiff argues that the ALJ's failure to accurately describe the claimant and his impairments when posing a hypothetical to the vocational expert and the ALJ's acceptance of the vocational expert's opinion in contradiction with agency regulations, is cause for reversal. (Doc. # 14-1 at 1). Plaintiff argues that there are three areas in which the ALJ's hypothetical was deficient: (1) failing to include all limitations the ALJ found to be credible by non-examining medical sources, (2) failing to include appropriate limitations related to Plaintiff's craniotomy, and (3) failing to include the use of an assistive device, namely a cane. (*Id.*). If a hypothetical presented to a vocational expert is accurate, an ALJ "may rely on the [vocational expert's] testimony to find that the claimant is able to perform a significant number of jobs." *Anderson v. Comm'r of Soc. Sec.*, 406

---

comfortable range of motion as to his head and neck, (Tr. 1400), and caused "tenderness," "pain and spasm," (Tr. 1543).

6

F. App'x 32, 35 (6th Cir. 2010). While a "slight error attributable to the ALJ's hypotheticals is not reversible error," if a more accurate hypothetical would have resulted in a finding of disability, the error may be grounds for reversal. *Kepke*, 636 F. App'x at 635-36; *see Potter v. Comm'r of Soc. Sec.*, 223 F. App'x 458, 463 (6th Cir. 2007). Further, the hypothetical question posed to a vocational expert "must accurately portray a claimant's physical and mental impairments" in order for the expert's opinion "to serve as substantial evidence in support of the conclusion that a claimant can perform other work." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). However, when posing a hypothetical to a vocational expert, the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

In Plaintiff's case, the vocational expert testified that a hypothetical individual with Plaintiff's RFC could not perform his past relevant work as a nurse. (Tr. 120). Further, the vocational expert opined that an individual with Plaintiff's RFC could perform work as a marker, checker, or routing clerk. (*Id.*). The vocational expert's testimony was based on the following hypothetical provided to her by the ALJ:

> [A]ssume a person of the claimant's age, educational level, past work background, the claimant's same skills. Assume further that the individual is able to work at the light exertional with the following restrictions. Occasional postural, meaning occasional balancing, kneeling, crouching, crawling, and climbing, except frequent stooping, must avoid concentrated exposure to vibration, must avoid even moderate exposure to hazards.

(Tr. 119).

First, Plaintiff contends the above description was deficient because the ALJ did not include all of his limitations, such as his inability to stand or walk for six hours of an eight hour day or sit for only six hours of an eight hour day, as determined by the non-

7

examining medical sources and Plaintiff's treating physician. (Doc. # 14-1 at 8-9). The ALJ's omission regarding Plaintiff's ability to stand or walk or sit for only six hours out of an eight hour day is harmless because this type of limitation is included in the agency's regulations governing the requirements for light work. *See* 20 C.F.R. § 404.1567(b) (noting that light work includes "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls"). Further, 20 C.F.R. § 404.1567(b) has been interpreted to mean that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). Thus, the ALJ did not err because the RFC's description of light work with restrictions naturally took into consideration Plaintiff's inability to walk only six hours out of an eight hour day, or sit only six hours out of an eight hour day.

Second, Plaintiff contends that the ALJ did not provide any limitations related to Plaintiff's craniotomy, which was performed due to Plaintiff's headaches, when crafting the hypothetical posed to the vocational expert. (Doc. # 14-1 at 8-9). In assessing Plaintiff's RFC, the ALJ decided that the claimant's complaints about the "intensity, persistence, and limiting effects of his symptoms" were "inconsistent because the evidence shows the claimant normally recovered from his brain surgery in November 2016, and although reported ongoing headaches, had some improvement with frequency." (Tr. 84).

When formulating a hypothetical question to be presented to a vocational expert, the ALJ "should include an accurate portrayal of [the claimant's] individual physical and mental impairments." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)

8

(internal quotations and alterations omitted). When evaluating complaints of pain, the ALJ should "consider all [the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). When there is objective medical evidence "from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged," the ALJ should then evaluate "the intensity and persistence of [the claimant's] symptoms, including pain," and determine what symptoms and pain "can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [the claimant's] ability to work." *Id.* But, because the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact," the ALJ's failure to include a description of Plaintiff's headaches in the RFC was not per se unreasonable. *Casey*, 987 F.2d at 1235. However, the assessment of a claimant's credibility "must find support in the record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

In the ALJ's determination, he acknowledged that Plaintiff suffered from headaches, but had recovered from his brain surgery and "had some improvement with frequency." (Tr. 84). The ALJ noted that Plaintiff's complaints about the intensity, persistence, and limiting effects of his symptoms were inconsistent. (*Id.*). Following Plaintiff's craniotomy, Plaintiff reported to his physician that his "current headaches [are]

9

actually much better than they were premorbidly," (Tr. 1340), which rebuts Plaintiff's hearing testimony that debilitating headaches prevented him from working, (Tr. 103-104). The ALJ further stated that he still considered the "reports of chronic" headaches in deciding how to limit Plaintiff's RFC. (Tr. 87). In acknowledging Plaintiff's chronic neck, head, and back pain, the ALJ limited Plaintiff's RFC to no more than frequent stooping and included that Plaintiff should avoid concentrated exposure to vibration and even moderate exposure to hazards. (*Id.*). The ALJ clearly evaluated Plaintiff's complaints of pain, took into consideration the medical record, and the frequency of headaches, and ensured that this limitation was accounted for in Plaintiff's RFC. The ALJ therefore considered the relevant evidence and made a credibility determination that is supported by substantial evidence and "entitled to considerable deference." *Howard*, 276 F.3d at 242.

Third, Plaintiff argues that the ALJ failed to include limitations related to Plaintiff's usage of his cane, which an examining source found to be medically required. (Doc. # 14-1 at 9, 11); (Tr. 1342). Social Security Ruling (SSR) 96-9p states that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." 1996 WL 374185, at *7 (July 2, 1996). In *Jones v. Commissioner of Social Security*, 815 F. App'x 926, 931 (6th Cir. 2020), the Sixth Circuit clarified that "a single notation of 'cane' cannot possibly provide 'the circumstances for which [the assistive device] is needed.'" (alteration in original) (quoting SSR 96-9p). The ALJ noted that Plaintiff was medically ordered to use a cane for balance difficulty, (Tr. 85), but did not note the use of the cane in Plaintiff's RFC, (Tr.

82), or the hypothetical given to the ALJ, (Tr. 119-120). The Commissioner argues that Plaintiff did not require a cane after January 2018. (Doc. # 16 at 13) (citing Tr. 1578, 1582). The Court ultimately concludes that the ALJ did not err by failing to include Plaintiff's usage of a cane in his RFC.

Plaintiff's usage of a cane was mentioned in his medical records and mentioned in his testimony, but the context in which it was needed was not described in medical documentation as contemplated in SSR 96-9p. (*See* Tr. 111 and 1342). Plaintiff testified that he uses his cane every day, inside his home and when out in public, and that if he did not use the cane, he would fall due to his balance issues. (Tr. 111). However, the records cited by the Commissioner note that Plaintiff exhibited no gait instability and was ambulating normally. (Tr. 1578, 1582). Moreover, the medical record contains examples of Plaintiff performing without the cane, (Tr. 937), or failing to use the cane, (Tr. 1346). Therefore, the ALJ's judgment will be upheld, as the Court does not resolve conflicts in the evidence, and should affirm the decision of the ALJ as long as there is substantial evidence in the record supporting the decision, even if the Court would come to a different conclusion. *See Cutlip*, 25 F.3d at 286; *Her*, 203 F.3d at 389-90. While there is medical documentation of Plaintiff's need for a cane, there is similarly documentation that Plaintiff failed to use the cane. Further, the record is missing any evidence of the circumstances in which Plaintiff needed to use the cane. Although the Court finds that a different conclusion may have also been appropriate, there is substantial evidence in the record supporting the ALJ's omission of the assistive device, and therefore remand on this basis is not warranted.

Lastly, Plaintiff alleges that the ALJ's reliance on the vocational expert's testimony is cause for reversal, because the testimony was based on underlying definitions or assumptions that are inconsistent with the Social Security Rulings. (Doc. # 14-1 at 14) (citing SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000)). Ruling 00-4p states that "SSA adjudicators may not rely on evidence provided by a [vocational expert], [vocational specialist], or other reliable source of occupational information if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions." 2000 WL 1898704, at *3. Plaintiff's argument is that the ALJ's description that he could "frequently walk" and "occasionally balance" are inconsistent with one another based on the agency's definition for light work. (Doc. # 14-1 at 13-15). But, walking is an "exertional limitation," while balancing is a "nonexertional limitation." SSR 96-9p, 1996 WL 374815, at *5. Because a "nonexertional limitation" is by definition an impairment that "does not directly affect the ability to . . . walk . . . includ[ing] . . . balance," the vocational expert's testimony was not premised on an underlying assumption inconsistent with the Social Security regulations. SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). Therefore, the ALJ did not err in relying on the vocational expert's testimony.

### 3. The ALJ's Adoption of Non-Examiner Opinions

Lastly, Plaintiff argues that the ALJ violated 20 C.F.R. § 404.1527(c) when adopting the opinion of non-examining physician, Dr. Reed, who failed to consider all of the medical evidence in the record. (Doc. # 14-1 at 4). Under the applicable Social Security regulation, 20 C.F.R. § 404.1527,[3] the SSA generally "give[s] more weight to the medical opinion of a source who has examined [the claimant] than to the medical

---

[3] Because Vernatter's claim was filed on November 14, 2016, this is the governing regulation. (Tr. 277-279).

opinion of a medical source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1). For non-examining sources specifically, "the weight [the ALJ] will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions." *Id.* § 404.1527(c)(3). The Social Security Administration has delineated between three types of acceptable medical sources: non-examining sources, non-treating (but examining) sources, and treating sources. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). The opinions of these sources are assigned different weight, with the opinions of treating sources being accorded the greatest weight, because they "are likely to be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)). Further, the ALJ must give "good reasons . . . for the weight [he] give[s] [the claimant's] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). Plaintiff's argument is broken down into two distinct parts: (1) the non-examiner, Dr. Reed, did not review the entirety of Plaintiff's medical records before opining that Plaintiff could perform light work, and (2) the ALJ did not give good reasons to discount Plaintiff's treating physician, Dr. Hart. Each of these arguments will be discussed in turn.

### a. Non-examiner Did not Review the Entirety of the Medical Record

While state agency medical consultants are highly qualified physicians, "when the non-examining source's opinion is based on review of an incomplete record, there must be an indication that the ALJ considered that fact before giving greater weight to the non-examining source's opinion." *Fannin v. Berryhill*, No. 3:17-cv-236, 2019 WL 1434653, at *8 (E.D. Tenn. Mar. 29, 2019) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409

13

(6th Cir. 2009)). "[W]here the ALJ fails to give good reasons on the record for according less than controlling weight to treating sources," reversal and remand is appropriate "unless the error is a harmless *de minimis* procedural violation." *Blakley*, 581 F.3d at 409 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)). A harmless error may be present if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Id.* (internal quotation marks omitted).

Here, although the ALJ only accorded the non-examining opinion of Dr. Reed "some weight," he did ultimately adopt Dr. Reed's conclusion that Plaintiff could perform light work. (Tr. 87). Vernatter takes issue with the ALJ's acceptance of Dr. Reed's opinion largely because the ALJ deferred to the non-examining source's assessment of his RFC, instead of Plaintiff's treating source, Dr. Hart, when the non-examining source did not examine the entirety of Vernatter's medical record. (Doc. # 14-1 at 4-7). According to Plaintiff, these records contain additional information about his pain and recovery from his craniotomy, and contrary to the ALJ's opinion, demonstrate that Plaintiff's condition had declined after the non-examiner's reviews. (*Id.*).

In *Fannin v. Berryhill*, the Eastern District of Tennessee evaluated the plaintiff's argument that the ALJ improperly rejected the opinions his treating sources and errantly relied on the opinions of non-examining state agency sources who did not review the complete record of the plaintiff's medical history. 2019 WL 1434653, at *8. Ultimately, the court affirmed the ALJ's determination because the ALJ's analysis spanned the entire record, the ALJ reviewed medical records and opinions made after the non-examining sources' opinions were rendered, and the ALJ subjected the non-examining sources' opinions themselves to "scrutiny sufficient to find that she considered that [the]

14

nonexamining state agency consultants did not review the entire record." *Id.* at *10. Similarly here, the ALJ indicated that he was aware that a portion of the record was received following the creation of the non-examining state agency consultant's opinion but concluded that that portion of the record "[did] not generally show a worsening in [claimant's] conditions, and shows [claimant] reported some benefit from lumbar injections in 2018." (Tr. 87). Because the ALJ acknowledged that the non-examining source did not have access to the complete record and further discussed the records which were unavailable to the non-examining source, remand is not appropriate on this ground.

### b.  Failure of the ALJ to Give Good Reasons to Discount Treating Physician

However, the ALJ is still required to "give good reasons on the record for according less than controlling weight to treating sources." *Blakley*, 581 F.3d at 409 (citing *Wilson*, 378 F.3d at 547). In deciding what weight to give a treating source's opinion, the ALJ must consider "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Fox v. Comm'r of Soc. Sec.*, 827 F. App'x 531, 537 (6th Cir. 2020) (quoting *Blakley*, 581 F.3d at 406). Further, "[a]n ALJ may not summarily discount a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the treating source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020); *see also Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("[I]t is not enough to dismiss a treating physician's opinion

as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.").

Here, the ALJ gave "little weight" to the opinion of Plaintiff's primary care physician, Dr. Hart, given in December of 2018, because "it [was] unsupported by Dr. Hart's treatment notes from February through November 2018 showing the claimant had normal gait, strength, and tone, and was ambulating normally." (Tr. 87). Dr. Hart's opinion provided that Plaintiff could only stand/walk less than two hours in an eight hour workday, could sit for two hours in an eight hour workday, could occasionally lift ten pounds, frequently lift ten pounds, could never bend, stoop, balance, climb a ladder or stairs, and would be absent from work more than four days a month due to his conditions. (Tr. 1606). Dr. Hart's treatment records indicate that Vernatter has muscle, joint, or bone problems, has chronic dull pain in his lower back that is aggravated by movement but does not produce gait instability due to his lumbar degenerative disc disease. (Tr. 1577-1579). Dr. Hart also indicated that Vernatter's chronic dull back pain is worsening and "seems to constantly hurt." (Tr. 1581, 1587). Other portions of the record also support Dr. Hart's acknowledgment of Vernatter's lumbar degenerative disc disease. (*See* Tr. 401 (stating claimant has "acute left-sided low back pain with left-sided sciatica"), 405 ("pain with ROM (range of motion) of low back"), and 447 (noting claimant has "degenerative disc disease")). As noted by the ALJ, Dr. Hart's treatment notes show that Vernatter's gait, strength, and tone were all normal, and he was able to ambulate normally. (Tr. 87). However, that was the only reason the ALJ gave as to why he assigned Dr. Hart's opinion "little weight." (*Id.*). The ALJ failed to consider "the length of the treatment relationship

and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician" as required. *Fox*, 827 F. App'x at 537 (quoting *Blakley*, 581 F.3d at 406). While the Commissioner asserts that the ALJ did consider consistency by comparing Dr. Hart's opinion to his treatment notes, the ALJ's reasoning even on this point was terse and largely unexplained. (*See* Doc. # 16 at 11-12). The ALJ did not consider Dr. Hart's treatment relationship with Vernatter, the supportability or the consistency of the opinion *with the record as a whole*, or any specialization Dr. Hart may have had.

By contrast, when considering the opinion of Dr. Reed, the non-examining source, the ALJ gave his opinion "some weight." (Tr. 87). However, the ALJ's characterization of the weight given as merely "some weight" appears to be an understatement considering the fact that the ALJ ultimately adopted the same RFC suggested by Dr. Reed. (*Id.*). Dr. Reed's opinion stated that "[c]laimant alleged limitations of lifting, squatting, bending, kneeling, and stair climbing are partially consistent with degenerative disease of cervical spine, just post lumbar surgery with continued low back pain radiating down left leg to foot," but that claimant's "alleged limitations of standing, reaching, walking, sitting, hearing are not consistent with physical exam." (Tr. 149). While the opinion of Dr. Reed and Dr. Hart differ, the ALJ does not offer a clear analysis of why he considered the opinion of Dr. Reed, a non-examiner, more persuasive than that of Dr. Hart, Plaintiff's treating physician. (*See* Tr. 87).

In *Hargett v. Commissioner of Social Security*, the Court remanded the decision denying the plaintiff's application for disability benefits because the ALJ failed to give good

17

reasons for assigning partial weight to the treating physician's functional capacity evaluation. 964 F.3d at 554-55. The court explained that "bare, conclusory statements [by the ALJ] neither satisfy the notice requirement of the good reasons rule nor allow us to review meaningfully whether the ALJ properly applied the treating physician rule." 964 F.3d at 554. There, as here, while the ALJ's opinion "touch[ed] on some of the factors to be considered under 20 C.F.R. § 404.1527(c)," namely supportability and consistency, there was "no meaningful analysis of the factors or explanation of how the ALJ's balancing of the various factors led the ALJ to conclude that the FCE should be given only 'partial weight.'" *Id.* The ALJ's opinion here suffers the same fate. The ALJ made no clear indication of why the § 404.1527(c) factors led him to assign little weight to Dr. Hart's opinion. Further, the court in *Hargett* found issue with "the ALJ's conclusory statements fail[ing] to identify the specific ways in which the FCE is not consistent with Hargett's overall medical record," and the ALJ's failure to explain why an opinion it gave great weight to was consistent with the record. *Id.* Both of these failures demonstrated "no apparent attempt 'to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.'" *Id.* (quoting *Friend*, 375 F. App'x at 552).

Similarly here, the ALJ failed to identify why Dr. Hart's opinion was not consistent with the medical record as a whole, instead only stating that it was inconsistent with Dr. Hart's treatment notes. (Tr. 87). Further, the ALJ did not explain why Dr. Reed's opinion was more persuasive than that of Dr. Hart, and therefore did not provide a proper explanation for discounting the treating physician's conclusion. Because of these failures,

18

the case will be remanded to the Social Security Administration for further review. *See Blakley*, 581 F.3d at 409 (citing *Wilson*, 378 F.3d at 547).

Moreover, the ALJ's failure to give "good reasons" was not harmless error. The Sixth Circuit has "recognized some limited circumstances where a failure to give good reasons could constitute harmless error," one of them being where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Hargett*, 964 F.3d at 554 (quoting *Wilson*, 378 F.3d at 547). Here, Dr. Hart's opinion was not "so patently deficient" that it could not possibly be credited. Rather, the record largely corroborates Dr. Hart's treatment notes, specifically with regard to Plaintiff's lumbar degenerative disc disease, and his opinion as to Plaintiff's RFC could have been informed by the regular back pain experienced by Plaintiff as a result of disc degeneration. (*See generally* Tr. 401, 405, 407, 1577-1587, and 1606). Further, as noted by the court in *Blakley*, even if substantial evidence supported the ALJ's decision weighing the medical opinions of the non-examining source and Plaintiff's treating physician, "substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2)[4] as harmless error." 581 F.3d at 410. Otherwise, recognizing "substantial evidence as a defense to non-compliance with § 1527(d)(2) [] would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised illusory." *Wilson*, 378 F.3d at 546. Therefore, the ALJ's failure to provide good reasons for discounting the opinion of Dr. Hart and instead deferring to a non-examining source

---

[4] When *Blakley* was decided the text now located in 20 C.F.R. § 404.1527(c)(2) was instead located in 20 C.F.R. § 404.1527(d)(2). The versions are substantially the same—the only changes being that "medical" was inserted in front of the word "opinion" when used and the section was renamed from section (d) to section (c).

opinion requires that the Court reverse and remand this matter to the Social Security Administration for proceedings consistent with this opinion.

III. CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment (Doc. # 14) is hereby **GRANTED**;

(2) Defendant's Motion for Summary Judgment (Doc. # 16) is hereby **DENIED**;

(3) This action is hereby **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) with instructions to adequately explain the treatment of Dr. Hart's opinion and appropriately weigh the opinion of the non-examining source, Dr. Reed, consistent with this Memorandum Opinion and Order; and

(4) A Judgment will be entered contemporaneously herewith.

This 21st day of May, 2021.



Signed By:
*David L. Bunning*
United States District Judge

J:\DATA\SocialSecurity\MOOs\Ashland\20-49 Vernatter MOO.docx